United States District Court
Eastern District of New York

- - - - - - - - - - - - - - - - - - - - - - - - X

United States of America

    - against -                                    Docket No. 24-CR-465 (PKC)

Leon Wilson,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW IN OPPOSITION TO
## THE GOVERNMENT'S MOTIONS IN LIMINE

**Preliminary Statement**

      The government seeks to admit inflammatory uncharged acts, stretch hearsay exceptions beyond constitutional limits, silence the defendant's own exculpatory words, and bar the defense from presenting relevant conditions at MDC-Brooklyn.

      The allegations must be considered in their proper context. This case arises out of an early-morning incident on September 4, 2023, while the defendant was on duty as a correctional officer at the Metropolitan Detention Center in Brooklyn ("MDC–Brooklyn"). The government's account, set forth in its motion in limine, depicts the defendant's actions in the most prejudicial light while omitting critical context: the heightened security concerns at the facility, the unusual presence of a suspicious vehicle in the staff parking lot at dawn, and the defendant's sworn duty to deter contraband trafficking and escapes.

      The government relies on disputed factual inferences - such as claims that the defendant "chased" a car for sport or recklessly fired without justification – to sway the court into granting broad evidentiary rulings in limine. If granted, these motions would tilt the playing field before

1

the jury ever hears the evidence. Specifically, the government moves (1) to admit evidence of uncharged acts; (2) to admit out-of-court statements it designates as non-hearsay while barring the defendant's own exculpatory statements; (3) to preclude relevant conditions and context at MDC; and (4) to compel disclosures that go beyond Rule 16. These requests must be denied. The jury is entitled to hear the full factual background, including the environment in which the defendant acted, and the defense must be permitted to present its case without one-sided evidentiary exclusions.

**Argument**

    **I.    The Government's Proposed "Other Acts" Evidence Should Be Excluded**

The government seeks to introduce two sets of uncharged conduct: (1) alleged threats and altercations with an inmate in August 2023, and (2) a September 5, 2023 stop-and-frisk conducted off BOP property with a disputed incident report. Neither set of allegations is intrinsic to the September 4, 2023 charged offenses, nor do they satisfy Rule 404(b). Admitting them would risk precisely the kind of propensity reasoning and collateral mini-trials the Federal Rules of Evidence are designed to prevent.

From the outset it must be noted that the Second Circuit treats uncharged conduct as intrinsic (i.e., direct) only when it arises from the same transaction as the charged offense or is necessary to complete its story; otherwise, it is governed by Rule 404(b). *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997); *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); see also *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994) (background evidence sometimes admitted to "complete the story," but still subject to Rule 403)(citation omitted).

    *i.    August 2023 Inmate Interactions*

According to the government, Mr. Wilson engaged in verbal disputes with an inmate concerning contraband smuggling in the weeks before September 4. These were institutional exchanges arising from his role as a correctional officer tasked with policing contraband. The government now seeks to magnify these supervisory disputes into proof of "aggressive" character. But whatever was said in August did not involve a firearm discharge, did not result in discipline or charges, and has no direct connection to the September 4 pursuit. To admit these incidents would be to retry collateral disputes and invite the jury to judge Wilson by alleged temperament, not the facts of the charged event.

    ii.    *September 5, 2023 Stop-and-Frisk*

The government also seeks to admit a separate stop-and-frisk Wilson conducted the day after the charged incident. At most, the government alleges discrepancies in his written report about the location of the stop. But this was an independent encounter involving a different civilian, on a different day, raising different legal and factual questions. It does not explain or complete the September 4 narrative. Admission would require a mini-trial about the truthfulness of paperwork - a side issue that risks confusing the jury and unfairly prejudicing the defense.

**A. Not Intrinsic or "Inextricably Intertwined"**

Evidence of uncharged conduct is not considered intrinsic unless it directly arises out of the same transaction as the charged crime or is necessary to complete the story of the offense. *United States v. Gonzalez*, 110 F.3d at 941–42; *United States v. Carboni*, 204 F.3d at 44. The August 2023 inmate incidents occurred weeks earlier, in a different setting, involving custodial discipline rather than an off-property vehicular chase. Likewise, the September 5 stop-and-frisk involved a different individual, on a different day, with different circumstances. These events do not complete the story of September 4; they are, instead, wholly separate episodes.

3

### B. Rule 404(b) Requires "Special Relevance" and Similarity

Because the evidence is not intrinsic, the government must satisfy Rule 404(b). The Second Circuit applies an "inclusionary" approach to Rule 404(b), but it remains the government's burden to articulate a genuine non-propensity purpose and to demonstrate that the prior acts are "sufficiently similar" to make the desired inference reasonable. *United States v. Peterson*, 808 F.2d 969, 974 (2d Cir. 1987). Here, the government invokes "intent" and "willfulness," but the required similarity is lacking. The August inmate disputes arose in the context of inmate supervision and discipline, while the charged offense involved firing from a moving vehicle at civilians. That factual gap makes any intent inference speculative. The September 5 frisk likewise lacks similarity to the September 4 shooting; it was not a use of deadly force, but rather a search of a bag and an administrative misstatement in a report.

The Second Circuit has cautioned that Rule 404(b) evidence "must be relevant to some disputed issue in the trial, and its probative value must not be substantially outweighed by unfair prejudice." *United States v. Figueroa*, 618 F.2d 934, 939 (2d. Cir. 1980). Where, as here, the government seeks to introduce episodes that are factually distinct from the charged offense, the only way they bear on the case is by inviting the jury to reason from alleged bad character. That is exactly what Rule 404(b) forbids. See *United States v. Ortiz*, 857 F.2d 900, 903 (2d Cir. 1988) (excluding prior-acts evidence where intent was not genuinely disputed)(citation omitted).

### C. Rule 403 Balancing Requires Exclusion

Even if the evidence cleared Rule 404(b)'s threshold, Rule 403 requires exclusion where the probative value is substantially outweighed by unfair prejudice, confusion, or waste of time. The Second Circuit repeatedly emphasizes the trial court's responsibility to prevent jury misuse of

4

other-acts evidence. In *United States v. McCallum*, 584 F.3d 471, 475–77 (2d Cir. 2009), the court cautioned against, "propensity evidence in sheep's clothing." In *United States v. Gupta*, 747 F.3d 111, 131–33 (2d Cir. 2014), the court recognized the danger that jurors will have "undue difficulty" separating permissible from impermissible inferences. That danger is acute here. The August inmate incidents would require litigating BOP disciplinary rules, credibility of inmate witnesses, and alleged threats—issues far removed from the charged shooting. The September 5 incident would spawn its own disputes over the location of a frisk, the contents of a bag, and whether an incident report was intentionally false or merely careless. Each would risk a distracting "trial within a trial."

### D. Character-by-Acts Evidence is Improper

The government's theory amounts to an effort to show that the defendant acted in conformity with a violent or rule-breaking character. The Federal Rules prohibit proving character by specific instances of conduct to show conformity. See *United States v. Oshatz*, 912 F.2d 534, 539 (2d Cir. 1990) (warning against "guilt-assuming hypotheticals" and improper character inferences). Allowing inmate testimony about prior threats or a disputed frisk report would in effect invite the jury to convict because the defendant is the kind of person who breaks rules, which is impermissible under Rule 405 as well as Rule 404(b).

Under controlling Second Circuit precedent, the August 2023 inmate incidents and the September 5, 2023 frisk are not intrinsic to the charged conduct. They also fail Rule 404(b)'s requirements of special relevance and similarity. Even if marginally probative, they must be excluded under Rule 403.

5

## II. The Government's Hearsay Theories Ignore the Rules and the Supreme Court's Demand for Narrative Integrity

The government's motion attempts to expand the hearsay exceptions beyond recognition, seeking to admit out-of-court statements while simultaneously barring the defendant from presenting his own exculpatory words. That approach would distort the evidentiary landscape and deprive the jury of the balanced narrative the Constitution demands. The Supreme Court has cautioned that trial courts must make evidentiary rulings "with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case." *Old Chief v. United States*, 519 U.S. 172, 183 (1997). That principle does not license the government to cherry-pick fragments of hearsay while walling off defense context; to the contrary, it requires that jurors be allowed to hear a coherent account of events, free from distortions created by selective exclusion.

### A. Second Circuit Precedent Requires Careful Limits on Hearsay

The Second Circuit has consistently underscored that out-of-court statements must either fall squarely within a recognized exception or be excluded. In *United States v. Gomez*, the Second Circuit reversed a conviction where the government introduced an informant's out-of-court statements under the guise of "background," but in reality, used them substantively to establish the defendant's role in a drug conspiracy. 617 F.3d 88, 91–92 (2d Cir. 2010). The court stressed that when testimony is offered for its truth - rather than to explain investigative steps - it is hearsay and must be treated as such. *Id.* 92. The government's effort here to admit wide swaths of out-of-court statements as "context" falls into the same impermissible pattern.

### B. Rule 803 Does Not Provide a Shortcut

Nor can the government rely on the Rule 803 exceptions to bootstrap otherwise inadmissible statements. The Second Circuit has long required that the exceptions -whether

6

business records, present sense impressions, or statements for medical treatment—be applied narrowly and with an eye to trustworthiness. See *United States v. Oates*, 560 F.2d 45, 72–75 (2d Cir. 1977) (excluding DEA chemist reports under Rule 803(8) and warning that expansive use of exceptions can circumvent confrontation rights). Likewise, the court in *United States v. McGrath* emphasized that a "recorded recollection" admitted under Rule 803(5) must bear clear indicia of reliability, and even then, a witness must generally be available for cross-examination. 613 F.2d 361, 367–68 (2d Cir. 1979). These precedents underscore that Rule 803 cannot be invoked as a catch-all for hearsay the government wishes to admit without scrutiny.

### C. Victim's Statements to EMTs and in Ambulance Video Are Inadmissible

One critical area the government presses is admission of the victim's statements to EMTs and in the ambulance video. The government invokes nearly every hearsay exception - Rules 803(1), (2), (3), and (4) -and further claims the Confrontation Clause poses no barrier. But those arguments overlook both the narrow scope of the exceptions and the constitutional limits on testimonial evidence.

Rule 803(4) covers statements made for purposes of medical diagnosis or treatment. This exception extends only to words that help doctors treat the patient - location of pain, onset of symptoms, or the nature of the injury. It does not license sweeping narrative attributions of fault. When a gunshot victim tells EMTs "I can't breathe" or identifies where he feels pain, those words may be pertinent to treatment. But when he goes further - "they just started shooting," or describing vehicles and blame - such statements are not medically necessary. To admit them under Rule 803(4) would stretch the exception beyond

The same is true for Rule 803(2), the "excited utterance." That exception rests on spontaneity: words blurted in the immediate stress of an event, not answers given after transport

7

and questioning. By the time EMTs and police officers are asking structured questions in an ambulance, the declarant is no longer reacting instinctively; he is recounting. An "excited utterance" cannot become a backdoor for admitting rehearsed or prompted narrative.

Rule 803(1), the present-sense impression, fails for a similar reason. A statement given blocks away, in an ambulance, well after the BMW chase and gunfire, is not "immediately after perceiving" the event. It is retrospective.

At most, some statements might fall under Rule 803(3) as evidence of then-existing condition: "I can't breathe." But even here, the exception extends only to the victim's condition and sensation at that moment. It does not extend to past beliefs or recollections offered to prove the event that caused those sensations.

Equally important is the Confrontation Clause. Even if certain words fit a hearsay exception, they remain inadmissible if they are testimonial. *Riggi v. United States*, 541 F.3d 94, 102 (2d Cir. 2008). Statements to law enforcement officers for the primary purpose of establishing past facts are testimonial.

Finally, even if the Court found a hearsay exception applied, Rule 403 demands careful redaction and limits. A body-cam video played in full risks flooding the jury with sympathetic imagery, distracting from the legal issues, and creating precisely the kind of mini-trial the rules forbid. The Court should, at a minimum, require the government to identify each statement it seeks to use, by speaker and timestamp, and limit admission to those portions that are both genuinely for treatment and clearly non-testimonial.

To preserve fairness and narrative integrity, the Court should exclude or heavily redact the EMT statements and ambulance video.

### D. Rule 403 Requires Exclusion Where Risks of Prejudice and Confusion Dominate

Even where a hearsay exception arguably applies, the court must still apply Rule 403 to ensure that probative value is not substantially outweighed by unfair prejudice, confusion, or needless mini-trials. The Second Circuit has been clear that the trial court must conduct this balancing with rigor. *See United States v. Gupta*, 747 F.3d at 131. Here, admitting layers of hearsay while simultaneously barring the defendant's explanatory statements would create precisely the kind of confusion, imbalance, and unfair prejudice that Rule 403 prohibits.

### E. The Narrative Integrity Mandate

*Old Chief*'s directive regarding "narrative integrity" applies with special force here. The Supreme Court recognized that jurors are entitled to hear evidence in a way that conveys a complete, coherent story rather than fragments that distort the truth. 519 U.S. at 189. That principle has been echoed in Second Circuit decisions stressing that background evidence must provide legitimate context, not a backdoor for propensity or hearsay. In *United States v. Harwood*, 998 F.2d 91, 99 (2d Cir. 1993) the court found the government's argument for admitting hearsay as background evidence unpersuasive. It held that the testimony was improperly admitted because it was irrelevant to the issue of why the investigating agent approached the defendant and had significant potential for prejudice.

By looking to exclude the defendant's explanatory statements while admitting the government's curated hearsay, the Government seeks to deprive the jury of the coherent narrative the Constitution requires. The government seeks to sanitize the environment in which the alleged incident occurred, barring the jury from hearing about the realities of life and work at the MDC. But context matters. Jurors are entitled to hear background evidence that gives the case "narrative

integrity," lest they be left with "gaps of abstraction" that prevent a coherent understanding of the facts. *Old Chief v. United States*, 519 U.S. at 187-89.

At MDC, those "gaps of abstraction" are critical. Officers work in a volatile, overcrowded, and often dangerous environment. The facility is plagued by contraband smuggling attempts, staff shortages, and frequent confrontations with inmates - conditions well documented in oversight reports, congressional testimony, and prior judicial findings. Correctional officers at MDC face:

- **Persistent contraband threats**: organized smuggling attempts involving ropes from within MDC by inmates, vehicles, visitors, and inmates, often occurring in the very perimeter areas where Mr. Wilson was stationed;

- **Chronic understaffing**: long shifts, inadequate backup, and reduced supervisory presence, leaving perimeter officers to make rapid decisions without immediate support;

- **Inmate violence and volatility**: fights, assaults on staff, and verbal confrontations, creating a constant baseline of risk and tension;

- **Physical layout challenges**: sprawling grounds, blind spots in camera coverage, and vehicle access points that make smuggling attempts difficult to monitor and easy to exploit.

Against this backdrop, Mr. Wilson's perceptions cannot be divorced from the environment in which he worked. The dangers of contraband infiltration and inmate hostility are not collateral issues - they are central to understanding why a correctional officer might interpret an unauthorized vehicle as a potential security threat and react as he did.

Just as the prosecution may invoke *Old Chief* to argue for a coherent story of guilt, the defense must be permitted to provide the jury with a coherent story of context. To exclude evidence of MDC's actual operating conditions would deprive jurors of the "robust evidence" necessary to evaluate whether Mr. Wilson acted willfully and unreasonably, or whether he responded - albeit

10

imperfectly - to an environment rife with danger and instability. *Old Chief v. United States*, 519 U.S. at 189.

### III. The Government's Bid to Exclude the Defendant's Own Out-of-Court Statements Would Distort the Narrative and Contravene Second Circuit Precedent

The government argues that Rule 802 categorically bars the defense from introducing the defendant's own prior statements, pointing to *United States v. Marin*, 669 F.2d 73 (2d Cir. 1982), and *United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003). In that case the court held that a defendant's own prior statements, when offered by the defense for their truth, constitute inadmissible hearsay unless an exception applies. 669 F.2d at 84.

Those decisions stand for the uncontroversial proposition that a defendant cannot unilaterally place his own hearsay before the jury for its truth. But the government's motion goes much further: it seeks to silence the defendant's out-of-court words altogether, even where those words are necessary to contextualize the government's own evidence or to avoid misleading the jury. That expansive approach is inconsistent with both the Federal Rules of Evidence and the constitutional requirement of narrative integrity.

The Second Circuit has long recognized that the hearsay bar is not absolute, and that fairness demands admission when the government's selective use of a defendant's statements would otherwise create a distorted picture. In *United States v. Marin*, while the court reaffirmed that a defendant may not simply introduce his own exculpatory statements wholesale, it also acknowledged that the rule must be applied in light of "the rule of completeness" and fairness to the accused. 669 F.2d at 84. Similarly, in *United States v. Yousef*, the court explained that although the defendant could not introduce an entire statement for its truth, he retained the right to testify or to seek admission of necessary portions where omission would mislead the jury. 327 F.3d at 153.

These cases reflect a balanced principle: a defendant cannot use self-serving hearsay to substitute for testimony, but neither can the prosecution wield Rule 802 to present a one-sided record stripped of context. If the government introduces snippets of the defendant's words while excluding clarifying portions under Rule 802, the jury will be left with a distorted and incomplete narrative. That result is precisely what *Old Chief* warns against. Allowing the government to introduce the defendant's statements in a piecemeal, prosecution-driven fashion while forbidding the defense from offering necessary context would itself mislead the jury.

Nor is the government correct to dismiss all of the defendant's statements as self-serving. In *United States v. Detrich*, 865 F.2d 17 (2d Cir. 1988), the court held that a statement made by a declarant was not hearsay because it was not offered to prove the truth of the matter asserted but to establish the defendant's state of mind. The court emphasized that the dangers of hearsay were not present because the statement's relevance was tied to the defendant's belief and understanding, not the truth of the declarant's assertion. *Id.* Similarly, in *United States v. Terranova*, 750 F. Supp. 3d 15 (EDNY 2024), the court explained that an out-of-court statement offered for purposes such as explaining a listener's subsequent behavior or providing background to relevant facts is not hearsay. Many of the defendant's statements - whether text messages, emails, or recordings - are relevant to explain how others responded, why certain investigative steps were taken, or to rebut the government's narrative of intent. Excluding them wholesale under Rule 802 would improperly collapse all non-hearsay uses into the hearsay bar.

In short, the government's position elevates form over substance. The Second Circuit has made clear that while a defendant cannot use hearsay as a substitute for testimony, the rules do not allow the government to excise the defendant's voice from the case entirely. To do so would deny the jury the full context necessary to assess intent, perception, and credibility. *Old Chief* requires

that evidence be presented with "evidentiary richness" sufficient to tell a coherent story, not one distorted by selective omissions. 519 U.S. at 183.

IV. **The Government's Attempt to Preclude Contextual Evidence Would Deprive the Jury of a Coherent Narrative in Violation of Rule 401, Rule 403, and Old Chief**

The government's motion to categorically exclude wide-ranging contextual evidence - including MDC's pervasive contraband threats, chronic institutional deficiencies, the background of individuals linked to the BMW, and the defendant's prior lawful conduct—presents an extraordinary danger. If granted, the jury would be left with a sterilized and distorted account of events, stripped of the context essential to evaluating perception, intent, and reasonableness. Excluding such evidence would not merely risk prejudice; it would virtually guarantee a fundamentally unfair trial, depriving jurors of the reality that MDC officers face daily -a volatile environment marked by constant threats of violence, contraband smuggling, and danger to staff and inmates alike. The jury cannot fairly assess the defendant's split-second decisions without understanding that his actions arose in a setting where correctional officers routinely confront life-threatening risks.

The rules of evidence do not license the prosecution to sanitize the trial by cutting away everything that explains the circumstances in which the defendant acted. Under Rule 401, relevance is a low threshold: evidence is admissible if it has *any tendency* to make a material fact more or less probable. See *United States v. Quinones*, 511 F.3d 289, 308 (2d Cir. 2007) ("The district court reasonably recognized that, regardless of the truth of Santiago's declaration about Quinones's knowledge of Santiago's status as an informant, the statement was admissible because it established Santiago's then-fearful state of mind, which explained Santiago's future actions and, in turn, those of the defendants"). And under *Old Chief v. United States*, 519 U.S. at 183, the Supreme Court emphasized that trial courts must approach evidentiary rulings "with an

13

appreciation of the offering party's need for evidentiary richness and narrative integrity." The government's motion here ignores that command.

### A. Contraband Smuggling Evidence is Central to State of Mind

The government seeks to restrict evidence of contraband smuggling at the MDC to a narrow sliver of testimony while barring the defense from placing those events in their broader context. But the defendant's state of mind cannot be understood in isolation. The August and September 2023 incidents did not unfold in a vacuum. The Second Circuit has consistently permitted background evidence to "to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." *United States v. Gonzalez*, 110 F.3d at 941. Here, that means permitting the jury to understand why a correctional officer would perceive a suspicious vehicle idling outside the facility as linked to imminent danger and contraband, and why that perception shaped his split-second actions. To excise that evidence risks leaving the jury with a distorted picture, contrary to the teaching of *Old Chief*.

### B. Institutional Conditions Are Relevant to Perception and Intent

The government also seeks to bar evidence of conditions at the MDC, including understaffing and inmate violence. But those conditions bear directly on how the defendant perceived threats, evaluated risks, and exercised judgment. Evidence that the facility was short-staffed or plagued by contraband informs whether his actions were rash or consistent with his training and environment. The Second Circuit has cautioned that determinations of relevance are "entrusted to the sound discretion of the district court," and should be admitted unless "arbitrary or irrational." *United States v. Rubin*, 37 F.3d 49, 52 (2d Cir. 1994). Excluding conditions evidence

14

would not be a neutral application of Rule 402—it would strip the jury of the very context it needs to assess intent under 18 U.S.C. § 242.

### C. Excluding Evidence About Inmate-2's Background Would Mislead the Jury

The government further asks the Court to preclude any evidence of Inmate-2's background, including his criminal history and gang affiliations. But the jury will hear that the BMW's occupants were smuggling contraband to him. To then forbid the defense from explaining who that inmate was, what affiliations he had, and how his presence factored into the institutional environment, would risk misleading the jury. The Second Circuit has recognized that that while evidence may have some prejudicial effect, it does not necessarily outweigh its probative value. *United States v. Mercado*, 573 F.3d 138 (2d 2009). Rule 403 is not a one-way ratchet: while the Court must guard against undue prejudice, it must also ensure that probative evidence is not excluded in ways that confuse the jury. Excluding Inmate-2's background will leave jurors with an incomplete and distorted narrative contrary to *Old Chief*.

### D. The Defendant's Prior Good Acts Are Not Categorically Inadmissible

The government's reliance on *United States v. Scarpa*, 897 F.2d 63 (2d Cir. 1990), to bar any mention of the defendant's prior lawful conduct, overreads Second Circuit law. While Scarpa held that a defendant cannot prove innocence through the absence of wrongdoing on other occasions, the court also acknowledged that evidence of reputation or opinion testimony about pertinent traits remains admissible under Rule 404(a)(2)(A) and Rule 405. See *United States v. Benedetto*, 571 F.2d 1246, 1249-1250 (2d Cir. 1978) (distinguishing between inadmissible specific acts and admissible reputation or opinion testimony). The government's categorical request to exclude all "good acts" evidence sweeps too broadly and would prevent the jury from hearing admissible character testimony.

15

### E. Evidence of Punishment Should Be Excluded

The government also suggests that if the defendant testifies, it should be allowed to cross-examine him about the potential consequences of conviction. The Second Circuit has made clear that the jury has no sentencing function and should reach its verdict without regard to what sentence might be imposed. *United States v. Pabon-Cruz*, 391 F.3d 86, 94-95 (2d Cir. 2004); *Shannon v. United States*, 512 U.S. 573, 579 (1994)("[P]roviding jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion."

The probative value of potential punishment on a testifying defendant's credibility is vanishingly small. To extend *Davis* in the manner the government urges would invert the rule, turning it from a shield protecting cross-examination into a sword for inflaming jurors with punishment exposure. That is precisely the type of risk Rule 403 exists to prevent.

## V. The Government's Demand for Reciprocal Discovery Should Be Denied or Narrowly Tailored

The government's final request seeks an expansive order compelling the defense to disclose exhibits, experts, and witness materials well before trial. But Rule 16(b) is not a sword for the prosecution to pierce defense strategy. The Second Circuit has consistently recognized that reciprocal discovery obligations are narrower than the government suggests and must be balanced against the defendant's constitutional right to present a defense.

### A. Rule 16(b) Does Not Require Premature Disclosure of Defense Theory

Rule 16(b)(1)(A) obligates the defense to disclose only those documents the defendant "intends to use in the defendant's case-in-chief." Fed. R. Crim. P. 16(b)(1)(A). Defendant's disclosure obligations are triggered only when the defense affirmatively places material into evidence to prove its own theory, not when it uses government documents or cross-examination to

test the prosecution's case. The Government's proposal would improperly chill cross-examination by forcing the defense to preview impeachment strategies under the guise of Rule 16. That is not the law. As courts in this Circuit have recognized, requiring disclosure of impeachment material would invert the adversarial process and undermine the defendant's Sixth Amendment rights.

### B. Rule 26.2 Sets Its Own Timing

The government also asks for an order requiring disclosure of Rule 26.2 material by October 15, 2025. But Rule 26.2 already provides a built-in mechanism: it requires disclosure only after a witness has testified on direct examination. Fed. R. Crim. P. 26.2(a). Timing is critical to avoid forcing premature disclosure of defense strategy. The government itself chose to produce 3500 materials early; that voluntary choice does not entitle it to accelerated reciprocal disclosures beyond what the rule itself requires. Simply stated, Rule 26.2 sets its own timing, which cannot be rewritten by judicial order at the government's request.

Dated: October 5, 2025                    Respectfully Submitted,

                                          /s/ Jeffery L. Greco
                                          _____
                                          Jeffery L. Greco, Esq.
                                          Greco Neyland P.C.
                                          1140 6th Avenue, Suite 1035
                                          New York, NY 10036
                                          212-951-1300 tel.
                                          jeff@gnlaw.nyc

                                          Mark DeMarco, Esq.
                                          100 Lafayette St., Suite 501
                                          New York, NY 10013
                                          718-239-7070 tel.
                                          msdlaw@aol.com