# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

LEON WILSON,

*Defendant.*

## DEFENDANT'S SENTENCING MEMORANDUM

## 24-CR-465 (PKC)

Respectfully submitted,

/s/ Jonathan Rosenberg
137 Court Street, Fl. 2
Brooklyn, N.Y. 11201
Tel: (718) 715-4845
office@rosenbergpllc.com

*Attorneys for Defendant*
*Leon Wilson*

May 14, 2026

ROSENBERG LAW FIRM
137 Court Street, Fl. 2
Brooklyn, New York 11201
Tel: (718) 715-4845
office@rosenbergpllc.com

May 14, 2026

**VIA ECF**
The Honorable Pamela K. Chen
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re**:   *United States v. Leon Wilson*, 24-CR-465 (PKC)
**Defendant's Sentencing Memorandum**

Dear Judge Chen:

We respectfully submit this memorandum on behalf of Leon Wilson in advance of his sentencing on May 29, 2026 (subject to a pending motion to continue).

## INTRODUCTION

Leon Wilson is a 51-year-old American citizen who left Trinidad at age 13, graduated from a Bronx high school, enlisted in the United States Army, was honorably discharged, and devoted the next quarter-century of his life to the United States Bureau of Prisons. He has no criminal history — none. He raised three children, married his wife of 28 years, bought a home, paid his taxes, and showed up for work at one of the most dangerous federal detention facilities in the country, week after week, for over two decades — often working 60-hour weeks, sometimes 16-hour shifts, through the COVID lockdown, through riots, through a building fire, and through a chronic staffing crisis that left perimeter posts unmanned on the very night this case arose.

On September 4, 2023, while assigned alone to an armed exterior post at 4:30 in the morning, he observed an unauthorized vehicle in the staff parking lot of a facility that had been plagued by nightly contraband breaches. He investigated. The vehicle fled. He pursued. He fired after testifying to seeing a passenger in the BMW brandish a firearm. The jury has spoken. But the question before this Court is not whether Mr. Wilson is guilty. It is how much of this man's remaining life the law requires — and justice permits — to be spent in a federal prison for a single tragic decision made by a person who had spent decades making the right decisions in service of his country, community, and yes, his government.

## THE MANDATORY MINIMUM ALREADY ACHIEVES THE PURPOSES OF SENTENCING

The Court's discretion on Count One exists in the shadow of a mandatory reality: the 120-month consecutive sentence on Count Two under 18 U.S.C. § 924(c)(1)(A)(iii). That

ROSENBERG LAW FIRM
137 Court Street, Fl. 2
Brooklyn, New York 11201
Tel: (718) 715-4845
office@rosenbergpllc.com

sentence — ten years, served consecutively — is not a recommendation. It is a congressional command. Whatever this Court imposes on Count One will be added to a decade of mandatory imprisonment that Mr. Wilson will serve in full.

The Supreme Court has expressly authorized this approach. In *United States v. Dean*, 581 U.S. 62 (2017), the Court unanimously held that a sentencing court may consider the impact of a mandatory consecutive § 924(c) sentence when calculating the sentence for the predicate count — including imposing a sentence well below the advisory guidelines range. As the Chief Justice explained, nothing in § 924(c) "restricts the authority conferred on sentencing courts by § 3553(a) and the related provisions to consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count." Id. at 71. The Court made clear that whether "the sentence for the predicate offense is one day or one decade, a district court does not violate the terms of § 924(c) so long as it imposes the mandatory minimum 'in addition to' the sentence for the violent or drug trafficking crime." Id. at 72. The defense respectfully submits that this is precisely such a case. A sentence at or near the statutory minimum on Count One — zero to twelve months — is sufficient but not greater than necessary to comply with § 3553(a) when combined with the 120-month mandatory term on Count Two. Every month above the minimum on Count One is a month beyond what Congress already determined is appropriate for discharging a firearm during a crime of violence. The total sentence should reflect the totality of the case, not mechanically stack guidelines on top of a mandatory minimum that already accounts for the weapon, the discharge, and the violence.

## THE § 3553(a) FACTORS FAVOR A MINIMAL SENTENCE ON COUNT ONE

### A. History and Characteristics — § 3553(a)(1)

Mr. Wilson's history is one of service, not criminality. He immigrated to the United States as a child, grew up in low-income neighborhoods in Brooklyn and the Bronx, graduated high school, and enlisted in the Army at 21. PSR ¶¶ 52-55, 65. He was honorably discharged and immediately entered the Bureau of Prisons, where he served for 25 years without a single criminal charge. PSR ¶ 80. He rose to Senior Officer Specialist — the highest non-supervisory rank — and served on the Disturbance Control Team and Hospital Escort Team. PSR ¶ 80; Tr. 1026-29.

His colleagues — over a dozen of whom wrote to this Court — describe a man who mentored young officers, fed the staff during the government shutdown, worked through the COVID lockdown for a year and a half, volunteered for the most dangerous assignments, and treated inmates and colleagues alike with professionalism. These are not form letters. They are from a U.S. Marshal, a Deputy U.S. Marshal, a Department of Homeland Security officer, a Capitol Police officer of 24 years, a retired Army veteran, and numerous fellow correctional officers who served beside Mr. Wilson for years. They describe the same person: steady, generous, professional, dependable. A man who took out a home equity loan on his own house to help a fellow soldier whose wife had cancer. A man who personally catered food for both

3

ROSENBERG LAW FIRM
137 Court Street, Fl. 2
Brooklyn, New York 11201
Tel: (718) 715-4845
office@rosenbergpllc.com

buildings during the COVID shutdown when morale collapsed. A man who talked his own cousin out of suicide by reminding him his daughter needed him.

Mr. Wilson is also a man in crisis. He suffers from chronic Hepatitis B contracted during military service. PSR ¶ 66. He has been diagnosed with Adjustment Disorder with Mixed Anxiety and Depressed Mood, with a history of obsessive thinking and panic attacks. PSR ¶ 70. He has experienced suicidal ideation since his conviction. PSR ¶ 71. He is a 100% service-connected disabled veteran. PSR ¶ 65. His mother, age 74, is undergoing chemotherapy for bone cancer. PSR ¶ 49. His father is 78 with lung issues. Id. His 14-year-old son is at home. PSR ¶ 59. His wife, who operates a daycare out of the family home, is struggling as a single parent. PSR ¶ 63. A sentence of 207 months means Mr. Wilson will not be released until he is approximately 68 years old. His parents will almost certainly not be alive when he comes home.

### B. Nature and Circumstances of the Offense — § 3553(a)(1)

The offense was serious. A man was shot and grievously injured. The Court heard the victim's statement and it is powerful. Mr. Wilson does not minimize what happened to Erick Encarnacion.

But context matters for sentencing. This was not a crime of greed, malice, or corruption. It was not an officer who beat a handcuffed detainee, who fabricated evidence, or who shook down inmates for money. It was a correctional officer — alone, on an armed post, in the dark, at a facility under nightly contraband assault — who made a catastrophic judgment in a high-stress encounter that lasted less than two minutes from parking lot to gunshots. He believed, however unreasonably, that he was responding to an institutional threat. The jury found that belief did not justify deadly force. That finding stands. But the nature of the error — a misjudgment born of misplaced vigilance rather than predatory intent — is relevant to the sentence.

Mr. Wilson did not target a stranger for sport. The occupants of the BMW were on federal property, in a restricted staff parking lot, at 4:30 a.m., to smuggle marijuana, cell phones, and cigarettes into a federal prison. Tr. 485-86. This does not justify the shooting. It does explain why Mr. Wilson perceived a threat where none existed and why he acted as he did. The Court should consider this when calibrating the sentence.

### C. Seriousness, Deterrence, and Protection of the Public — § 3553(a)(2)

The 120-month mandatory minimum on Count Two already serves these purposes powerfully.

Seriousness: Ten years of mandatory imprisonment for a first-time offender with a quarter-century of public service communicates the gravity of the offense. Any additional imprisonment on Count One adds incrementally to punishment that is already severe.

4

ROSENBERG LAW FIRM
137 Court Street, Fl. 2
Brooklyn, New York 11201
Tel: (718) 715-4845
office@rosenbergpllc.com

Deterrence: Mr. Wilson's career is destroyed. His pension is gone. He is a convicted felon. He has been incarcerated since November 21, 2025, in protective custody at a county correctional facility — conditions significantly more restrictive than the general population. The conviction itself is a devastating deterrent. Every correctional officer in the Eastern District knows what happened to Leon Wilson.

Protection of the public: Mr. Wilson is 51 years old with no criminal history. He will never again work in law enforcement. He will never again carry a firearm or service weapon. The risk of recidivism for a first-time offender of his age, background, and circumstances is negligible. The Probation Department itself acknowledges he poses a low risk of substance abuse and recommends no special conditions beyond the standard. The community does not need 17 additional years of incarceration to be safe from Leon Wilson.

### D. The Need to Avoid Unwarranted Sentencing Disparities — § 3553(a)(6)

The Probation Department recommends 87 months on Count One plus 120 months consecutive on Count Two — a total of 207 months. That recommendation would place Mr. Wilson's sentence among the most severe ever imposed in a § 242 case arising from a single shooting incident, despite the fact that the victim survived, the defendant has zero criminal history, and the defendant served his country for nearly three decades.

By comparison, the 120-month mandatory minimum on Count Two alone exceeds the total sentences imposed in many § 242 cases involving far more egregious conduct — officers who repeatedly beat restrained individuals, who used tasers on compliant suspects, who engaged in patterns of abuse. The mandatory minimum already produces a sentence that is, for a first offender, extraordinary. Layering 87 additional months on top of it risks a gross disparity with cases involving more culpable defendants.

### E. The Guidelines Overstate the Seriousness of This Case

The advisory guidelines range on Count One is 87-108 months, driven in significant part by the 6-level public-official enhancement under §2H1.1(b)(1) and, if applied, the 2-level obstruction enhancement under §3C1.1. As set forth in our PSR objections, Mr. Wilson objects to the obstruction enhancement, which if removed reduces the range to 70-87 months. But even the reduced range overstates the offense for § 3553(a) purposes.

The guidelines for § 242 offenses were not designed with a case like this in mind. They were designed to address the most serious civil rights violations — systematic abuse, corruption, and predatory violence by officers who exploit their authority for personal gain or sadistic satisfaction. Mr. Wilson's case, while serious, does not reflect that paradigm. A sentence within or near the guidelines range, stacked on a 120-month mandatory minimum, would produce a total sentence of approximately 17 years for a single incident by a first offender. That is not proportionate. That is not just.

5

ROSENBERG LAW FIRM
137 Court Street, Fl. 2
Brooklyn, New York 11201
Tel: (718) 715-4845
office@rosenbergpllc.com

### F. Collateral Consequences

Mr. Wilson faces consequences beyond imprisonment. As a naturalized citizen, he faces the risk of denaturalization and deportation. PSR ¶ 55. He has lost his career, his pension eligibility, his VA disability benefits, and his right to possess firearms for life. His family — including his 14-year-old son, his elderly parents, and his wife — have been devastated. These are not arguments for leniency as a matter of right, but they are relevant to § 3553(a)(1)'s direction that the Court consider the defendant's history and characteristics, and to § 3553(a)(2)(D)'s mandate that the sentence provide the defendant with needed correctional treatment in the most effective manner.

### CONCLUSION

Leon Wilson is not a monster. He is a man who made a split-second law enforcement decision in reaction to seeing a life-endangering threat while pursuing what he believed to be an escapee; he will now live with the consequence of that conduct for the rest of his life. The jury's verdict stands. But the sentence should reflect not only the worst moment of his life but the entirety of it — 25 years of service, an honorable military career, a family that depends on him, a community of colleagues who uniformly describe a man of integrity, and a defendant who has never before been in trouble with the law.

The mandatory 120-month sentence on Count Two ensures that Mr. Wilson will spend a decade in federal prison. That is a severe punishment. Any additional sentence on Count One should be minimal — sufficient but not greater than necessary. Mr. Wilson respectfully requests that the Court impose a sentence of time served or no more than twelve months on Count One, to run consecutively to the mandatory 120-month term on Count Two, for a total sentence of 120 to 132 months.

Dated: May 14, 2026

Respectfully submitted,

/s/

Jonathan Rosenberg, Esq.
137 Court Street, Fl. 2
Brooklyn, N.Y. 11201
Tel: (718) 715-4845
office@rosenbergpllc.com

Attorneys for Defendant
Leon Wilson

/enclosures exhibited at A and B